UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEOPONA, INC. (D.B.A. AUDIOSOCKET), A Delaware corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UK CYCLING EVENTS, LTD., a private limited company registered in the United Kingdom, et al.,<br><br>Defendants. | CASE NO. C17-1765RSM<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants UK Cycling Events, Ltd. ("UKCE's") and Gareth Roelofse's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). Dkt. #19. Plaintiff Leopona, Inc. (d/b/a Audiosocket) and the artists suing for copyright infringement (collectively "Plaintiffs") oppose this Motion. Dkt. #32. For the reasons stated below, the Court DENIES Defendants' Motion.

//

//

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 1

## II. BACKGROUND[1]

Plaintiff Leopona, Inc., (herein "Audiosocket") is a Delaware corporation with offices in Seattle, Washington and New Orleans, Louisiana. The remaining Plaintiffs are related companies and music artists.

Audiosocket is a music licensing and technology company founded in 2009. Audiosocket manages a catalog of over 64,000 songs created and produced by independent artists. The company's main purpose is to find licensing opportunities for these songs. Most licensing activity is focused on locating and securing placements in films, television shows, ad campaigns, video games and digital media. A small set of Audiosocket clients license the music for streaming in-store retail environments. Audiosocket issues more than 1000 licenses per month.

Audiosocket's revenue is driven by licensing fees, as it retains 50% of the gross licensing revenue and 50% of all performance royalty revenue, which is paid via performing rights societies such as ASCAP, BMI and SESAC. Audiosocket's Standard Artist Agreement allows the artists to retain ownership of both the master sound recording and the publishing rights in their music composition. Under its Artist Agreements, artists give Audiosocket permission to promote their music to potential licensees for commercial purposes.

Audiosocket uses technology to "watermark" its licensed songs, encoding inaudible data each time it is uploaded or downloaded. This allows rights holders/owners to track copyrights and to ensure intellectual property is protected and properly used. Through that technology, Audiosocket alleges that between May 18, 2012, and October 20, 2016, UK Cycling employees Gareth Roelofse and Jon Gilbert executed 34 license agreements (collectively, the "License

---

[1] The following background facts are taken from Plaintiffs' Complaint, Dkt. #1, and accepted as true for purposes of ruling on Defendants' Motion to Dismiss.

Agreements") for the music tracks specified in the upper section of Exhibit A to the Complaint. *See* Dkt. #1 at 15.

These first 34 licenses were so-called "Personal Licenses." For two to four dollars, the Personal Licenses granted Gilbert and Roelofse a perpetual right to use certain music tracks licensed by Audiosocket "solely for personal, non-commercial use." These Licenses allow individuals to create personal videos and post them to the web while acknowledging and paying a nominal fee, however the Personal Licenses further stated, "[f]or the avoidance of doubt, Licensee may not use the Licensed Tracks in (or on) any: . . . Advertisement or promotion of a product, service or brand." *See* Dkt. #33-1 at 2.[2] The Personal Licenses also stated "[a]ny dispute arising out of or relating to this License shall be commenced in the federal or state courts located in King County, Washington." *Id.* at 3. The tracks subject to the Personal Licenses are identified in the upper section of Exhibit A. *See* Dkt. #1 at 15. In addition to the 34 Personal Licenses identified above, Mr. Roelofse also purchased one Professional Photographer/Videographer License (sometimes referred to as a "Wedding License") which for $35 allows professional photographers and videographers to use the licensed music tracks as part of professionally-produced videos and slideshows they then sell. Consistent with that limited use, and the relatively minor charge associated with the License, the Professional Photographer/Videographer License Agreements expressly prohibit the use of licensed tracks for advertising purposes. These Agreements state: "[f]or the avoidance of doubt, Licensee may not use the Licensed Track in (or on) any: . . . Advertisement or promotion of a product, service, or brand except [the Licensee's own videography business]," and also include the same forum

---

[2] The Court will consider the License Agreements attached to the record by Plaintiff as clearly incorporated into the Complaint by reference therein. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 3

selection clause as above. Dkt. #33-1 at 5–7. The track subject to the Professional Photographer/Videographer License is identified in the lower section of Exhibit A. *See id.*

Plaintiffs allege that, despite these License Agreement restrictions, Defendants used the 35 licensed tracks 42 times as the soundtracks for uploaded YouTube videos that promoted UKCE bicycle tours. The videos also allegedly promoted other products and brands. According to the Complaint, these commercials remained on YouTube, actively advertising UK Cycling Events services and the products of its partners to tens of thousands of viewers, until December 2016, when Audiosocket informed the Defendants of their breaches and infringements.

### III. DISCUSSION

**A. Legal Standard under Rule 12(b)(2)**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154, (9th Cir. 2006) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003)). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citing *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted)). Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff. *Id.*

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Id.* Jurisdiction can be established by general or specific jurisdiction. The Ninth Circuit relies on a three-prong test for analyzing a claim of specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the

forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802, 2004 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)). In return for these "benefits and protections, a defendant must -- as a quid pro quo – "submit to the burdens of litigation in that forum." *Id.* (citing, *inter alia*, *Burger King*, 471 U.S. at 476). The reasonableness determination requires the consideration of several factors, including (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and

(7) the existence of an alternative forum. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

**B. Defendants' Motion under Rule 12(b)(2)**

Defendants argue that this Court lacks personal jurisdiction over them as they reside in the United Kingdom and have no contacts with this forum.

Plaintiffs have alleged that Defendants, specifically Mr. Roelofse on behalf of UKCE, entered into the License Agreements above and that the songs subsequently showed up on videos uploaded by UKCE to YouTube. If these allegations are true, they can form a basis for specific jurisdiction under the above standards. While it is true that the License Agreements list the Licensee as "Mrs. M K Roelofse," Dkt. #33-1 at 2, and it may be true that UKCE does not employ a Mrs. M K Roelofse, the Court finds that Plaintiffs have certainly pled sufficient circumstantial evidence in this case to make a prima facie showing. The surname used, Roelofse, demonstrates a connection to Defendants, as well as the use of the songs in videos identified with UKCE. If there is a dispute about whether "Mrs. M K Roelofse" is actually Defendant Roelofse, it is resolved in favor of Plaintiffs for purposes of this Motion. *See Pebble Beach*, 453 F.3d at 1154.

Defendants argue that a "click-through" form license agreement executed electronically from another country is insufficient to confer specific jurisdiction, citing *Attachment Corp. v. Celcom Axiata Berhad*, No. C10-0526-RSM, 2010 WL 4856793 (W.D. Wash. 2010). Dkt. #19 at 16. This case is distinguishable for two reasons. First, the license agreement in *Attachment Corp.* had language stating only that it was "governed by the laws of the State of Washington, USA." *Attachment Corp.*, 2010 WL 4856793 at *3 The Court ruled:

> …this language cannot be said to require that litigation occur in a particular court. A court may find exclusive jurisdiction has been conferred upon the use of mandatory language, which makes clear that venue lies exclusively in a specified location. *Docksider v. Sea Technology*, 875 F.2d 762, 763–764 (9th Cir.1989). Here, the language falls short of requiring that venue be set in Washington. As such, the language in question does not constitute significant evidence of contact between Defendant and the forum.

*Id*. Here, the language in question makes clear that venue lies exclusively in state and federal courts in King County, Washington.

Second, *Attachment Corp.* discussed how "the acceptance and breach of these contracts occurred entirely outside of Washington." *Id.* at *2. In this case Plaintiffs have alleged that Defendants uploaded the infringing content on YouTube with a global audience, potentially including an audience in this forum. The Court thus finds that the first and second *Schwarzenegger* prongs are met. Although Defendants argue this exercise of jurisdiction does not comport with fair play and substantial justice, *see, e.g.,* Dkt. #34 at 12–13, these arguments rely heavily on the presumed "fact" that Defendants were not a party to the License Agreements. This fact is in dispute and the Court has already ruled that Plaintiffs have set forth a sufficient prima facie case with regard to this question. Plaintiffs allege that Defendants explicitly agreed to state and federal courts located in King County dozens of times by purposefully obtaining these songs from Audiosocket's website. The Court also finds it is better equipped to analyze the law in question than the courts where Defendants are located. In sum, the Court finds that Defendants have failed to present a "compelling case" that the exercise of jurisdiction would not be reasonable under the above standard and will thus deny Defendants' Motion under Rule 12(b)(2).

//

//

## C. Legal Standard under Rule 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

## D. Defendants' Motion to Dismiss under Rule 12(b)(6)

Defendants move to dismiss under Rule 12(b)(6) arguing that: 1) Defendants were not parties to the license agreements, 2) the pleading is deficient because it fails to state sufficient details of Defendants' breach, 3) Defendants are outside the reach of U.S. Copyright Law as they are in the United Kingdom, 4) at least some of the claims are barred by the three-year statute of limitations, and 5) Plaintiffs failed to satisfy the requirements of 17 U.S.C. § 411(a) with regard to registering their copyrights. Dkt. #19 at 22–26. The Court will briefly address each argument in turn.

First, the Court finds that Plaintiffs have adequately pled that Defendants were parties to the license agreements as stated above. That Defendants *deny* the allegation that Mrs. M. K.

Roelofse is really Defendant Roelofse, an agent of UKCE, has no bearing given the standard for a Rule 12(b)(6) motion.

Second, the Court finds that Plaintiffs state sufficient facts to satisfy the *Twombly/Iqbal* standard with regard to breach. Plaintiffs identify the songs at issue and the process by which Defendants may have acquired them and signed license agreements. Plaintiffs plead that the infringing YouTube videos, which are connected to UKCE, remained online until December 2016, "when Audiosocket informed the Defendants of their breaches and infringements." Dkt. #1 at 10. The Court finds Defendants have adequate notice about the infringement at issue, and that Plaintiffs' claims are facially plausible.

Third, the Court finds that, because the Complaint alleges that Defendants engaged in infringement on YouTube, it is possible that such infringement did not take place *entirely* abroad and thus the Copyright Act can reach Defendants. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (affirming that "United States copyright laws do not reach acts of infringement that take place **entirely abroad**") (emphasis added); *see also Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) (Plaintiff alleged sufficient facts to withstand a motion to dismiss by alleging the defendant uploaded a video from Canada using YouTube's servers in California); *Crunchyroll, Inc. v. Pledge*, No. C 11-2334 SBA, 2014 WL 1347492, at *17 (N.D. Cal. Mar. 31, 2014).

Fourth, the Court finds that Defendants' statute of limitations defense arguments are premature and in any event do not warrant dismissal under Rule 12(b)(6). Defendants argue that the Complaint "fails to set forth any allegation which plausibly demonstrates that **all** of the alleged infringement took place within the statutory period." Dkt. #19 at 24 (emphasis added). Defendants appear to concede that at least some of the alleged infringement is pled to have occurred in the statutory period. In any event, Plaintiffs do not need to set forth the evidence of

when the various breaches of the licenses occurred at this stage in litigation. The Court finds that the Complaint alleges sufficient information to plausibly assert these claims.

Finally, the Court finds that Plaintiffs have satisfactorily pled the statutory requirements of 17 U.S.C. § 411(a) by pleading that they applied for copyrights prior to filing suit. *See* Dkt. #1 at ¶¶ 66-75; *Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 621 (9th Cir. 2010).

## CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss under Rules 12(b)(2) and Rule 12(b)(6) (Dkt. #19) is DENIED.

DATED this 6th day of June 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE